UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSHUA EPPS, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>PEPSICO, INC. and QUAIL MOUNTAIN COFFEE & VENDING, d/b/a PEPSI-COLA BOTTLING<br><br>　　　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Joshua Epps ("Plaintiff") brings this action against PepsiCo, Inc., ("PepsiCo") and Quail Mountain Coffee & Vending, d/b/a Pepsi-Cola Bottling ("PCB") (collectively, "Defendants") by and through his attorneys, individually and behalf of all others similarly situated ("Class Members"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his counsel's investigation, and information and belief.

## INTRODUCTION

1. Plaintiff, individually and as a class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), for unsolicited telemarketing calls made by or on behalf of Defendants using an artificial and/or prerecorded voice. Plaintiff, individually, and for Class Members, seeks an injunction and an award of statutory damages to Class Members under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

2. Plaintiff Joshua Epps was a resident of Klamath Falls, Oregon at all times during the events alleged in the Complaint. At all relevant times Mr. Epps was the user, subscriber,

owner and possessor of the cellular telephone number 541-638-XXXX.  Mr. Epps never provided Defendants with consent to call him using an artificial or prerecorded voice or otherwise.  Despite that, Defendants placed numerous telemarketing calls to Mr. Epps's cellular phone from the phone number 541-884-1313 using an artificial or prerecorded voice, including but not limited to a call on February 9, 2022.  When Mr. Epps answered these calls, he heard a recording saying it was Pepsi calling and then the recorded voice asked whether he would like to restock his supply of Pepsi products.   The calls to Mr. Epps' cellphone from Defendants have been a nuisance and an invasion of his privacy.

3. Defendant PepsiCo, Inc. is, and at all relevant times was, a North Carolina corporation with a principal place of business located at 700 Anderson Hill Road, Purchase, New York, 10577

4. Defendant Quail Mountain Coffee & Vending is, and at all relevant times was, an Oregon corporation with a principal place of business located at 4033 Miller Avenue, Klamath Falls, Oregon 97603 registered under the name "Quail Mountain, Inc."  Quail Mountain Coffee & Vending does business under the name "Pepsi-Cola Bottling" and identifies itself on its website, kfpepsi.com, as "Southern Oregon's Pepsi Distributor."[1]

5. Each of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each of these Defendants acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

---

[1] https://kfpepsi.com/

6. The Court has federal subject matter jurisdiction under 28 U.S.C. § 1331.

7. This Court has personal jurisdiction over Defendants because Defendant PepsiCo maintains its headquarters in New York, does business in the State of New York, and because the wrongful acts alleged in this Complaint were committed in or emanated from New York the headquarters of Defendant PepsiCo, Inc.

8. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and because Defendant PepsiCo is headquartered in this District.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227 *et seq.*

9. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims v. Arrow Fin. Services, LLC*, 565 U.S. 368 (2012) ("The Act bans certain invasive telemarketing practices").

10. The TCPA regulates, among other things, the use of an artificial or prerecorded voice to deliver messages via telephone. Specifically, the plain language of section 227(b)(1)(B) states that it shall be unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," if either the caller or recipient is within the United States.

11. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules*

*and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013).

12. The FCC has also confirmed that a party can be vicariously liable for calls that are placed by third parties in violation of Section 227(b) of the TCPA and that subsection's corresponding regulations. *See In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013). *Accord, Jenkins v. National Grid USA*, No. 15-cv-1219, 2017 WL 1208445, *3 (E.D.N.Y. Mar. 31, 2017); *McCabe v. Caribbean Cruise Line, Inc.*, No. 13-cv-6131, 2014 WL 3014874, *3 (E.D.N.Y. July 3, 2014).

## FACTUAL ALLEGATIONS

13. Plaintiff has never provided Defendants with consent to call him using an artificial or prerecorded voice.

14. Despite that, Defendants placed numerous telemarketing calls to Mr. Epps's cellular phone from the phone number 541-884-1313 using an artificial or prerecorded voice, including but not limited to a call on February 9, 2022.

15. When Mr. Epps answered these calls, he heard a recording saying it was Pepsi calling and then the recorded voice asked whether he would like to restock his supply of Pepsi products.

16. The calls to Mr. Epps' cellphone from Defendants have been a nuisance and an invasion of his privacy.

17. PCB placed each of these calls at the direction and on behalf of PepsiCo, while acting as its agent. At all relevant times, PCB was acting with PepsiCo's permission, knowledge and control. PCB made all of the calls at issue for the benefit of PepsiCo.

18. PCB holds itself out as an agent of Pepsi. On each of the calls at issue, PCB identified itself as "Pepsi," demonstrating that it was acting with the apparent authority of PepsiCo. The name of PCB's website—kfpepsi.com—highlights its connection to PepsiCo. When PCB's phone number is called, a recording states "Offices of PepsiCola." PCB even uses the PepsiCo logo as its own:





19. Furthermore, the apparent authority of PCB can be traced back to manifestations of PepsiCo itself. Specifically, PepsiCo permitted PCB to use the Pepsi logo and to hold itself out as an alter ego of PepsiCo.

20. Based on these facts, a third party would reasonably infer, as Plaintiff reasonably inferred, that the calls placed by PCB were made either by PepsiCo itself or by an agent of PepsiCo acting on behalf of PepsiCo.

21. Furthermore, PepsiCo provides actual authority to PCB to make the calls at issue

5

on behalf of PepsiCo. PepsiCo's licensing agreements with PCB direct PCB to sell PepsiCo's products.

## CLASS ACTION ALLEGATIONS

22. **Class Definitions**: Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and the following Class:

> All persons within the United States who (a) received a telephone call on his or her landline or cellular telephone; (b) made by or on behalf of Defendants; (c) at any time in the period that begins four years before the filing of the complaint in this action to the date that class notice is disseminated (the "Class").

23. Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify the Class definition if discovery and/or further investigation reveal that it should be expanded or otherwise modified.

24. <u>Numerosity</u>: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control.

25. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff is not different in any relevant way from any other member of the Class, and the relief he seeks is common to the Class.

26. <u>Commonality</u>: Plaintiff's and Class Members' experiences receiving calls by or on behalf of Pepsi are common. They received uninvited robocalls for the purposes of marketing Pepsi's products or services. The calls were made despite the fact that neither Plaintiff nor Class Members had expressly consented to such calls.

27. In addition, common questions of fact and law exist as to all members of the Class and predominate over the questions affecting only individual members of the Class. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class Member. The predominant common questions include:

   a. Whether Defendants made telephone calls to Plaintiff and Class Members using an artificial or prerecorded voice;

   b. Whether PCB placed the calls at issue, and if so, if it did so while acting as an agent of PepsiCo;

   c. Whether Defendants and/or their agents had legally effective consent to place telemarketing calls using an artificial or prerecorded voice to Plaintiff and Class Members;

   d. Whether Plaintiff and Class Members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

   e. Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

28. <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, including consumer and TCPA class actions, and Plaintiff intends to prosecute this action vigorously.

29. <u>Predominance and Superiority</u>: The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The damages suffered by each individual member of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class Members to individually obtain effective relief from Defendants' misconduct. Even if Class

Members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

30.     <u>Injunctive Relief is Appropriate</u>: Based on information and belief, Defendants continue to engage in the improper practices discussed above.  Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiff and Class Members for which they have no adequate remedy at law.  In particular, Plaintiff seeks the following specific relief:

   a. Require Defendants and their agents to retain proof of any prior express written consent to make telemarketing calls;

   b. Require Defendants and their agents to cease making telemarketing calls using an artificial or prerecorded voice to any person who has not provided prior express written consent to receive such calls;

<u>**COUNT I**</u>
**Violations of the Telephone Consumer Protection Act,
47 U.S.C. § 227, *et seq*.
(On behalf of Plaintiff and the Class)**

31.     Plaintiff incorporates by reference and re-alleges herein all paragraphs alleged above.

32.     Plaintiff brings this claim individually and on behalf of the members of the Class.

33.     47 U.S.C. § 227(b)(1)(B) states that it shall be unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," if either the

caller or recipient is within the United States.

34. As alleged herein, Defendants have called Plaintiff using an artificial or prerecorded voice.

35. Defendants never obtained Plaintiff's prior express consent, written or otherwise, to call him with an artificial or prerecorded voice. Defendants have thus violated 47 U.S.C. § 227(b)(1)(B).

36. Because Defendants authorized and/or made the prerecorded calls and made no effort to obtain Plaintiff's prior express consent, Defendants' violations were knowing and/or willful.

37. As a result of Defendants' violations of 47 U.S.C. § 227 (b)(1)(B), Plaintiff and members of the proposed Class are entitled to an award of $500.00 in statutory damages for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

38. Because Defendants' violations of 47 U.S.C. § 227 (b)(1)(B) were knowing and/or willful, Plaintiff and members of the proposed Class are entitled to treble damages of up to $1,500.00 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, respectfully requests that this Court enter judgment and order in their favor against Defendants as follows:

- a. An order certifying the proposed Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

- b. Judgment against Defendants, and in favor of Plaintiff and the other Class Members in the amount of $500 per violation of the TCPA as proven at trial;

- c. Judgment against Defendants, and in favor of Plaintiff and the other Class

     Members in the amount of $1,500 per knowing and willful violation of the TCPA as proven at trial;

d. Equitable and injunctive relief, including injunctions enjoining further violations of the TCPA;

a. An award of pre-judgment and post-judgment interest, as provided by law;

b. Leave to amend the Complaint to conform to the evidence produced during discovery and at trial; and

c. Such other relief as may be appropriate under the circumstances.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: February 18, 2022       Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Joshua D. Arisohn*
   Joshua D. Arisohn

Joshua D. Arisohn
Matthew A. Girardi
Julian C. Diamond
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
     mgirardi@bursor.com
     jdiamond@bursor.com

*Attorneys for Plaintiff*